**UNITED STATES of America, Plaintiff,**

v.

**Marco Auerlio Pacifici DIAS, Defendant.**

**Crim. A. No. 78–CR–211.**

United States District Court,
D. Colorado.

Nov. 16, 1978.

---

992

Joseph F. Dolan, U. S. Atty., Nancy E. Rice, Richard M. Stuckey, Stephen M. Munsinger and Richard S. Vermeire, Asst. U. S. Attys., Denver, Colo., for plaintiff.

Martin Blitstein, Miami, Fla., Brian Edward O'Reilly, Denver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, Chief Judge.

Defendant has been heretofore tried and convicted of a Title 21 offense, and he is awaiting sentence. His counsel, Martin Blitstein, a member of the Florida Bar appearing *pro hac vice,* has raised a singular question concerning government interference with defendant's right to effective assistance of counsel. In capsule form, this is his argument:—

Mr. Blitstein represented a defendant in another case which was tried before Judge Finesilver. In the course of the presentation of the government's case, Mr. Blitstein charged that an assistant United States Attorney, Ms. Nancy Rice, made a false statement. During the first recess thereafter, Mr. Stuckey, the First Assistant United States Attorney, told Mr. Blitstein that he resented the accusation made as to the truthfulness of his colleague, Ms. Rice, and Mr. Stuckey said that if it happened again he "would take Mr. Blitstein to the mat."

The matter was called to Judge Finesilver's attention, and he thought that no action was required. A partial transcript in that case which I think sets forth all of the recorded proceedings before Judge Finesilver material to this question has been made a part of the record in this case.

In any event, when Dias' case came on for trial, at the last minute, Mr. Blitstein announced that he was so frightened and intimidated by Mr. Stuckey's comment that he would "take you to the mat", he was unable to represent Mr. Dias and that Mr. Dias was thus deprived of effective assistance of counsel because of this egregious "threat." Of course, a substantial amount of time had intervened between the incident which occurred before Judge Finesilver and the time of the trial of Mr. Dias, and there was ample opportunity to employ other counsel. However, Mr. Blitstein unabashedly suggested that although he was not afraid to appear in the unrelated trial, (prosecuted by Ms. Rice but not by Mr. Stuckey) he was so frightened he couldn't appear in Dias' trial and that there was no other lawyer possessed of ability approaching his. He said that since he was intimidated, Mr. Dias couldn't be effectively represented by a member of the Colorado bar because no Colorado lawyer could do the job Mr. Blitstein said he would do if he weren't cringing in fear of Ms. Rice and Mr. Stuckey.[1] [I mention parenthetically that our local rule demands that before an out-of-state attorney can be admitted *pro hac vice,* he must "associate with him an active member of the bar of this court who shall meaningfully and substantially participate in the preparation and trial of the case."] Mr. Brian O'Reilly was that Colorado lawyer, and he had attended every pretrial hearing. However, the day the case went to trial, Mr. John Blish, a former assistant state district attorney in Colorado, appeared with Mr. O'Reilly. Mr. Blish tried the case for the defendant, and he tried it well. Mr.

1. Before all of this happened, I severed defendants in this conspiracy case. I took this unusual action because of scurrilous charges made by Mr. Blitstein against a prominent Colorado lawyer. Feelings between counsel ran so high I thought it would be unfair to try the defendants together. The defendant in the other case was tried first, and, represented by a Colorado lawyer, he was acquitted.

Blitstein was not present in the courtroom during the trial, but, periodically, he relayed telephonic messages to me about efforts being made to have the United States Supreme Court [which was in vacation] stop the trial and take action to force the United States Court of Appeals for the Tenth Circuit to issue a writ prohibiting the trial of Dias' criminal case. The procedure allegedly taken in the Supreme Court was beyond my ken, but I was told that the High Court would sit in special session to consider the Tenth Circuit's horrendous misconduct in failing to stop the trial pursuant to Mr. Blitstein's request. Nothing came of this, and in due course, the Tenth Circuit denied the application for a writ of prohibition.

The trial didn't take long since the government's evidence showed a hand-to-hand buy of cocaine by DEA agents, and there were ample witnesses to the sale. Predictably, defendant was convicted in short order.

Post-trial, Mr. Blitstein reappeared, and, without hint of intimidation, he pressed the Sixth Amendment claim that defendant had been deprived of effective assistance of counsel because his chosen lawyer, Mr. Blitstein, was frightened and intimidated by Ms. Rice and Mr. Stuckey. I tried to set this matter for hearing, but Mr. Blitstein proved to be a mighty busy man. [He has explained on the record that he tries criminal cases throughout the United States and that he has tried criminal cases in forty or more federal courts. *Martindale* says he was admitted to the bar in 1968.] I managed to get the hearing set for October 10, 1978, but, although the setting was made far in advance, just before the scheduled date, word was sent to me through an emissary that Mr. Blitstein couldn't show up because October 10 was Yom Kippur. When, in response to my request that he contact me, Mr. Blitstein telephoned, I told him that my daybook said that Yom Kippur was October 11, and not October 10. I suggested that the hearing go forward as

scheduled. Mr. Blistein at first expressed surprise as to the date of Yom Kippur, but he quickly and nimbly responded that his problem still existed because he had to attend his own temple in Miami, and he couldn't get from Denver to Miami by sundown October 10 if the hearing were held as scheduled. That excuse I couldn't handle, so I continued the hearing until October 23, 1978, and I set aside a half-day for it in accordance with prior representations as to the time which would be required.

On or about October 19, 1978, late in the afternoon, Mr. O'Reilly telephoned to say that Mr. Blitstein had advised him that the hearing would take most of the week and that it would probably be necessary to continue it because of the time which would be required for all of the witnesses to testify. The hearing was not continued, and when time came for it to start, there was no plethora of witnesses present. At first Mr. Blitstein wanted to withdraw the motion. I permitted him to withdraw it, but I said that we would make the evidentiary record to insure that the facts would be available in the Court of Appeals should another change of heart occur and should the "effective assistance of counsel" argument be renewed on appeal of this case. [During the colloquy, Mr. Blitstein said that the matter should more properly be raised in a civil suit for damages brought under 42 U.S.C. § 1981 against Mr. Blish, or at least that's what I think was meant.[2] However, I am not sure whether the putative plaintiff in the civil case is Dias or Blitstein.]

In the interim between the trial of Mr. Dias and the hearing on the claim that counsel was frightened and intimidated by Ms. Rice and Mr. Stuckey, Mr. Blitstein became the subject of an indictment by this court's grand jury. In that indictment he was charged with two counts of fraud by wire, one count of interstate transportation of money obtained by fraud, and two counts of travel in aid of racketeering. He was to

---

**2.** Mr. Blitstein charges that Mr. Blish was his lawyer and that he wasn't the defendant's. Inexplicably, after the *Dias* hearing during which Mr. Blitstein said he was going to sue Mr. Blish, that same Mr. Blish appeared as local counsel for Mr. Blitstein in *United States v. Blitstein,* the case in which he is named as a defendant in a five count indictment.

be arraigned before the magistrate in advance of the *Dias* hearing of October 23rd, but it snowed a little that morning, and he couldn't get a taxi from his motel to the courthouse. He was late for the hearing, and, accordingly, he was arraigned in his own case during a recess in the *Dias* hearing.

Only a review of the transcript can adequately show the unbelievable, weird, and in part tragic sequence of events of the hearing. When it started, Mr. O'Reilly wasn't present and he was said to have with him all the necessary paperwork. It was represented that he was the only person who knew the situation concerning the whereabouts of the witnesses who were supposed to appear. We went as far as we could [which wasn't very far] and recessed to await Mr. O'Reilly. Later that morning we received word that he had been involved in a serious automobile accident driving from Vail to Denver, and the hearing recessed to obtain more detailed information. We were told later that he was in the hospital in serious condition with a reported broken neck, and the hearing recessed to permit Mr. Blitstein to try to obtain more information as to the whereabouts of the paperwork and the witnesses who had been arranged for by Mr. O'Reilly but who were to be examined by Mr. Blitstein.

There isn't much reason for detailed recitation of the chain of events as they took place. Suffice it to say that if a writer used them as a basis for a fictional story, the book wouldn't sell because it would be thought to be too unbelievable. Accordingly, I come back to the issues in the case; i. e., was Mr. Blitstein intimidated by Ms. Rice and Mr. Stuckey, and was defendant denied effective assistance of counsel?

I don't reach the question of whether there would be a Sixth Amendment violation if some timid lawyer should really be intimidated when the entire Colorado bar was available for employment. I know that Mr. Blitstein vigorously argues that there is no lawyer in Colorado who matches his skills and he says that Mr. Dias wants him and only him as his lawyer. I seriously question that the Sixth Amendment means that a defendant is deprived of a constitutional right if for some reason a particular lawyer can't appear when there are scads of other skillful lawyers who could be employed. If that be the law, defendants can't be brought to trial if they employ a lawyer who is too busy to try the case, and, confronted with lawyers with a "nationwide practice", courts couldn't operate. Worse yet, lawyers who are so self-conscious they are intimidated at the thought of coming to court would be the most sought after members of the criminal trial bar, because their cases couldn't be tried. This would be Valhalla for defendants, but I don't think it's the law. And approaching from a more devious tack, a lawyer could bait the prosecution into saying something which would "intimidate" timid counsel, and the defendant would be home free. However, even if the law were that absurd, I find, and I find emphatically that Mr. Blitstein was not intimidated, and I find, and I find emphatically that his claim of intimidation is a contrived charade and a ploy.

During the course of the hearing I commented that I had found no case squarely in point, and I said that the several cases cited by Mr. Blitstein were not helpful. He said that he knows of no case really in point, but although I know of no reported case in which this strange contention was advanced, biographers of Howe and Hummell say that Hummell did exactly the same thing in the Magistrates Court of New York City during the heyday of Boss Tweed. Perhaps the history of Howe and Hummell is being repeated.

I reiterate that anyone not personally present during the hearings we have had is at a disadvantage in realizing the overwhelming demonstration that Mr. Blitstein was *not* intimidated. He thoroughly enjoyed every minute of his ploy, and he is a consummate, though not a very convincing, actor. Let's think about some of the facts:—

1. The alleged intimidation occurred in a *different case,* and the judge in that case

said that he saw no reason to keep the case from going forward. The incident took place during presentation of the government's evidence in that trial, and Mr. Blitstein carried on with the trial. He got an acquittal. Yet, in this unrelated case, he says that the unrelated indictment should be dismissed because he is frightened as a result of the incident which took place during his earlier successful trial.

2. He said that he is afraid to try this case because of the misuse of the power of the office of the United States Attorney and he says that he is physically afraid of Mr. Stuckey and Ms. Rice. [I think that if she stretches out, Ms. Rice stands about 5′2″, and I note that for some reason Mr. Blitstein volunteered for the record that he is a "pretty good athlete."]

3. If Mr. Blitstein was intimidated from trying the case of defendant Dias, I have no understanding as to why the intimidation ended when it came time to hold the post-trial hearing, which, as I have said, was after the indictment of "intimidated" counsel. [When we all thought that Mr. O'Reilly was just late to court, it was never suggested that he would conduct the post-trial hearing.] The 180° turn wasn't explained to me, and I can't fathom the distinction between being fearful at time of trial and not fearful post-trial. The two ogres, Rice and Stuckey, were at counsel table during the post-trial hearing, and Mr. Blitstein fought back vigorously all through the hearing, although by this time not only had he been told by Mr. Stuckey that he would be "taken to the mat", but he had been indicted for offenses carrying a potential of some 25 years in prison. He was not the least reluctant to aim snide remarks at the ogres, and he fought vigorously without sign of fear, hesitation or intimidation.

4. As a matter of fascinated curiosity, I experimented with letting Mr. Blitstein have his way and I experimented with being cross with him. I do not think that any opponent or any judge could do anything which would prevent Mr. Blitstein from speaking up or would slow him down in the slightest, and, other than *ipse dixit* coupled with conclusionary testimony from friendly witnesses, there was no evidence of impairment of Mr. Blitstein's vigorous advocacy. The record will have to speak for itself, but I think he went all-out in an uninhibited fashion. In fact, Blitstein's client, Dr. Mortensen, slipped up and testified that they discussed this "effective assistance of counsel" argument before the *Dias* trial to be used in it as a stratagem. Another witness described Mr. Blitstein as "a very aggressive person", and I agree with this characterization.

5. I can think of only two lawyers I have known who would have been more impossible to intimidate than Mr. Blitstein. They used to "take each other to the mat" with free wheeling glee and abandon, and each could hardly wait for the next affray. The defense lawyer was Fred Dickerson who is now dead, and the prosecutor was Bill Doyle who is perched on high, but I have heard no rumor of his demise. I think that Mr. Blitstein was exactly as frightened by Mr. Stuckey's "threat" to "take him to the mat" as the warriors I have mentioned would have been had one of them gentled down his remarks to the other by saying only that they were "going to the mat."

6. In a somewhat more serious vein, if Mr. Blitstein is so easily intimidated, he should retire from the trial bar, because if a statement by an opposing lawyer saying that something will be vigorously pursued drives a lawyer from a case, that lawyer should confine his practice to office work, and he certainly should not try criminal cases in 40 federal courts in a short span of 10 years. If he has tried criminal cases in 40 federal courts and has never had a more heated exchange with opposing counsel, he has led a charmed and sheltered life. I am sure that such is not the fact, because from my personal observation "intimidated counsel" has been in the pits before, and he can take good care of himself in a rough and tumble trial. The record shows that Mr. Blitstein has experienced other encounters with the law, and he has volunteered that he was active in "the protest movement" during the Viet Nam war. In my judg-

ment, he is an irrepressible egoist whose claim of intimidation and fear is a sham advanced in an effort to defeat justice.

7. When, at the last minute, Mr. Blitstein decided that he was so frightened he could not go forward with the defense of Mr. Dias, he had Mr. Blish come into court. According to Mr. Blitstein, Mr. Blish was to represent him and Mr. Dias was to be represented only by Mr. O'Reilly,[3] (a person Mr. Blitstein earlier said had never tried a case). What we were faced with if Mr. Blitstein had gotten his way was a trial of a defendant represented only by completely inexperienced counsel, Mr. O'Reilly, who, in post-trial testimony said his occupation was that of real estate salesman. As structured by O'Reilly and Blitstein we had a defendant abandoned by a lawyer of self-proclaimed nationwide reputation who arranged representation for himself in a lawsuit he was not a party to, but provided no experienced counsel for his client who had retained him.[4] [The obvious goal was to structure an appellate court argument that Mr. O'Reilly was inexperienced and that Dias wasn't adequately represented.] Because Mr. Blish understood his professional obligation, Blitstein's last ditch shot went wide of its mark. It is a credit to Mr. Blish that he performed his professional duty and represented Mr. Dias in a competent fashion. It does Mr. Blitstein no credit that he cast his client adrift and provided no experienced representation for him.[5] Of course, that's not what really happened. Mr. Blitstein just wanted to play games with the court and with our system of justice. He wasn't intimidated when the incident occurred. He wasn't intimidated at time of trial. He wasn't intimidated at the post-trial hearing, even after he became a defend-

ant charged in a five count criminal indictment. Mr. Blitstein doesn't intimidate easily, and his deserted client wasn't denied effective assistance of counsel. It is high time Blitstein and O'Reilly recognize their professional responsibility and face up to the fact that the law is not just fun and games.

As I said at the outset, the motion filed in this case was withdrawn, but I set out the facts as I find them should the argument be renewed in the appellate court.

---

**3.** I don't understand Blitstein's right to representation as distinguished from representation of the defendant. I hope that the defendant's interests and his lawyers' interests weren't in conflict.

**4.** The file reflects that the lawyer first employed by Dias mailed Mr. Blitstein the $10,-000.00 retainer.

**5.** The record reflects that Dias consented to representation by Mr. Blish. Blitstein says this was because Dias is a Brazilian with language impediments. The presentence report shows that Dias completed work at the University of Denver as an exchange student, and I observed no communication problems on his part. In fact, when it served his purpose to take Mr. O'Reilly's deposition, Dias' waiver of his right to be present was quickly obtained by Mr. Blitstein without benefit of an interpreter.